# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | No. 4:19-CV-01584 |
| Plaintiff, | (Judge Brann) |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 1, 2019

Plaintiff is a transgender man bringing claims of discrimination on the basis of his gender identity against his former employer, the Pennsylvania Department of Corrections, as well as former supervisors and coworkers in their individual capacities. Plaintiff moves to proceed in this lawsuit under the pseudonym "John Doe."

Federal Rule of Civil Procedure 10(a) typically requires complaints to "include the names of all the parties," but courts permit plaintiffs to proceed pseudonymously in limited circumstances. The plaintiff must show "(1) a fear of severe harm, and (2) that the fear of severe harm is reasonable."[1] "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth

---

[1] *Doe v Megless*, 654 F3d 404, 408 (3d Cir 2011).

control, transexuality[*sic*], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'"[2] Courts of Appeals have "held that a district court must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party."[3]

The United States Court of Appeals for the Third Circuit's balancing test, originally laid out by the Eastern District of Pennsylvania in *Doe v Provident Life and Accident Insurance Co*[4] and adopted by the Court of Appeals in *Doe v Megless*,[5] is unwieldy. It first instructs the trial court to evaluate six factors in favor of anonymity:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.[6]

Next, the court is to weigh three additional factors disfavoring anonymity:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a

---

[2] *Megless*, 654 F3d at 408, quoting *Doe v Borough of Morrisville*, 130 FRD 612, 614 (ED Pa 1990).
[3] *Wagner v Holtzapple*, Case No 13-cv-3051, at 4 (MD Pa July 10, 2014), quoting *Does I thru XXIII v Advanced Textile Corp*, 214 F3d 1058, 1067 (9th Cir 2000).
[4] 176 FRD 464 (ED Pa 1997).
[5] 654 F3d 404 (3d Cir 2011).
[6] *Id* at 409.

particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.[7]

Despite their length, we are told these factors are *nonexhaustive*.[8]

While appropriate in some circumstances, the flaws of multifactor balancing tests are well documented—even well-crafted multifactor tests can be difficult to apply, difficult to predict, and invite needless litigation.[9] And the *Megless* factors are not the crown jewels of multifactor tests. To start, they are hopelessly imprecise and redundant. For instance, the "universal level of public interest in access to the identities of litigants," whether "there is a particularly strong interest in knowing the litigant's identities," "the magnitude of the public interest in maintaining the confidentiality of the litigant's identity," and whether "there is an atypically weak public interest in knowing the litigant's identities" are befuddlingly four separate factors. Surely, if there is a "particularly strong interest" in knowing the litigant's identities, then there is not an "atypically weak" public interest, which itself tells us something about the "magnitude" and "universal level" of the public interest in

---

[7] *Id.*

[8] *Id.*

[9] *See, for example*, *Jerome B. Grubart, Inc v Great Lakes Dredge & Dock Co*, 513 US 527, 547 (1995) (rejecting a proposed multifactor test because it "would be hard to apply, jettisoning relative predictability for the open-ended rough-and-tumble of factors, inviting complex argument in a trial court and a virtually inevitable appeal"); Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U Chi L Rev 1175, 1179–80 (1989) (criticizing balancing tests' lack of predictability).

maintaining the litigant's confidentiality. These inquiries, and others, meander and criss-cross into each other's paths, to the extent they differ at all.

What's more, the test does not provide what weight each enumerated factor should be given, let alone how *un*enumerated factors should tip the balance. One could hardly be blamed for thinking they carry equal gravity. But some are clearly central—Is there a substantial basis for fear?—while others are secondary or infrequently implicated—Do the parties have illegitimate motives in seeking or opposing pseudonymity? The inclusion of so many factors flattens the seeming importance of each.[10]

This morass not only adds pages to briefs, it obscures the heart of the inquiry: Does the Plaintiff risk severe harm by proceeding under his or her real name? And, if so, is this risk outweighed by a particularly strong public interest in knowing the Plaintiff's identity?[11] The *Megless* factors may assist by providing a compendium of possible considerations, but this Court will focus on these two questions.

---

[10] Indeed, while I will not criticize my colleagues for correctly applying the law given to them, I simply note that opinions applying *Megless* and similar tests from other circuits frequently read as a rote recitation of factors with a conclusion tacked on the end. This style is not conducive to the reader scrying which factors were determinative in the court's decision. Or, perhaps more troublingly, the court may in fact have treated all the factors as coequal.

[11] *See Megless*, 654 F3d at 409 ("[E]ach court agrees that the purpose of the balancing test is to allow a district court to determine whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation."). That this is the heart of the inquiry can also be seen from the *Megless* factors themselves, if we do a little sifting. Factor 2 asks the threshold question of what harm is feared and whether that fear is reasonable. Factors 1 and 6, his prior identity disclosures and his motives, examine the plaintiff's credibility for claiming fear, and Disfavoring Factor 3 examines the defendant's credibility in opposing the motion. The remainder incorporate possible vectors of the public's interest in knowing the identity, such as

Courts have long recognized that the harms arising from disclosing a person's transgender status are among those that make protection by pseudonym appropriate.[12] As litigation around transgender issues has increased, so too have more courts permitted transgender plaintiffs to proceed pseudonymously.[13] The Third Circuit in *Megless* specifically listed it as an area where courts have allowed pseudonyms.[14] As the United States Court of Appeals for the Second Circuit has succinctly summarized, "[T]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate."[15]

The Plaintiff in the case at bar faces these harms. Litigating under his real name would out his transgender status to the world. He avers that up to this day he

---

the nature of the legal issues at stake (Factor 4) or whether the plaintiff is a public figure (Disfavoring Factor 2).

[12] *See, for example*, *Borough of Morrisville*, 130 FRD at 614; *Doe v McConn*, 489 F Supp 76, 76 (SD Tex 1980) (permitting transgender plaintiffs to proceed pseudonymously); *Doe v Blue Cross & Blue Shield of Rhode Island*, 794 F Supp 72, 74 (DRI 1992) (same).

[13] *See, for example*, *Doe v Gardens for Memory Care at Easton*, Case No 18-4027, Doc 3 (ED Pa Sept 21, 2018); *Doe v Parx Casino*, Civ A No 18-5289, Doc 4 (ED Pa Jan 2, 2019) (permitting lesbian plaintiff with a masculine gender expression to proceed under a pseudonym); *Foster v Andersen*, 2019 WL 329548, at *2 (D Kan Jan 25, 2019); *Doe v City of Detroit*, 2018 WL 3434345, at *3 (ED Mich July 17, 2018).

[14] *See Megless*, 654 F3d at 408 ("Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality[sic], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'"). The Third Circuit has also recognized the significance of a person's privacy interest in the closely related context of sexual orientation, which the court stated was "an intimate aspect of his personality entitled to privacy protection" and found that forced disclosure of it violated the Fourth Amendment. *See Sterling v Borough of Minersville*, 232 F3d 190, 196 (3d Cir 2000).

[15] *Powell v Schriver*, 175 F3d 107, 111 (2d Cir 1999). *See also Whitaker v Kenosha Unified School District No 1 Board of Education*, 858 F3d 1034, 1051 (7th Cir 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity.").

has kept his transgender status a closely guarded secret, disclosing it only as necessary to comply with legal requirements. Divulging it in connection with this complaint, which alleges harassment arising from intensely personal subject matter, poses a particularly high risk of severely compromising the privacy the Plaintiff has labored to preserve.

The public interest in knowing the Plaintiff's identity is relatively low. He is not a public figure. I further note that he makes a limited request, moving only to have his name and address concealed. This means that, unlike a sealed proceeding, the public will have access to everything else in the proceedings as they would in a typical case. Given that, the public interest in monitoring the courts will not be not greatly harmed.[16] There is no risk of prejudice to the opposing parties because the Plaintiff has agreed to fully participate in discovery and depositions. Neither the public nor the parties have a strong interest in publicly revealing the Plaintiff's name.

Because the Plaintiff faces a significant risk of severe harm to his privacy, and the public interest in knowing his identity does not outweigh that risk, I conditionally grant the Plaintiff's motion to proceed under the pseudonym "John Doe." Should information come to light that would justify this Court revisiting this ruling, Defendants may raise it at a later date.

---

[16] *See* Lior Jacob Strahilevitz, *Pseudonymous Litigation*, 77 U Chi L Rev 1239, 1246–47 (2010) (explaining why pseudonymous litigation does not meaningfully harm the public's ability to monitor the courts when the case involves obscure litigants).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge